SURGE OPCO, LLC,                                    Case No.

       Plaintiff,                          Hon.

vs.

PENNYMAC LOAN
SERVICES, INC.,

       Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff Surge OpCo, LLC sues Defendant PennyMac Loan Services, Inc.

("PennyMac"), and states as follows:

### INTRODUCTION

1. This case is about PennyMac's theft and unauthorized use of Surge's trade secrets, propriety standards, and other confidential competitive information – information that Surge created over the course of several years. PennyMac's theft is no accident but a deliberate attempt to convert Surge's software, terminate its relationship with Surge, and continue to use that software without reimbursing Surge.

2. Upon information and belief, PennyMac has also created workflows to copy data from Surge's system into PennyMac's cloned version.

3. Surge asks this Court to issue an injunction requiring PennyMac to stop

Case 2:26-cv-11212-JJCG-APP ECF No. 1, PageID.2 Filed 04/14/26 Page 2 of 20

using Surge's data and information and to return that data and information and never use it again without Surge's express written permission.

4. This behavior is reminiscent of the actions PennyMac took in connection with another company, Black Knight, that resulted in a $158 million dollar award to Black Knight for PennyMac's unlawful actions in Florida.

## PARTIES, JURISDICTION, AND VENUE

5. Plaintiff Surge OpCo, LLC is a Michigan limited liability company with a principal place of business at 1895 E Rodeo Walk Drive, Suite B200-PO47, Holladay, UT 84117. On March 17, 2026, Surge Solutions, LLC ("Surge Solutions"), which is the company that had the business dealings with PennyMac at issue in this case, merged with Surge OpCo, LLC. Prior to the merger and at all times relevant to this action, Surge Solutions was a Michigan limited liability company with a principal place of business in Rochester, MI. As part of the merger, the rights and obligations, including those under the agreement and intellectual property at issue in this case, were transferred to Surge OpCo, LLC. Therefore, "Surge" in this Complaint will interchangeably refer to Surge OpCo, LLC and Surge Solutions, LLC.

6. Surge is a leading provider of software, data, and analytic solutions for the mortgage industry across North America.

7. Defendant PennyMac is a Delaware limited liability company with its

principal place of business at 3043 Townsgate Road, Suite 200, Westlake Village, California 91361.

8. PennyMac is a large originator and servicer of mortgage loans.

9. This Court has jurisdiction under 28 USC § 1332 as the citizenship of the parties is diverse and the amount in controversy is in excess of the minimum amount necessary for diversity of citizenship matters.

10. This Court has jurisdiction over Surge's claims under the Defend Trade Secrets Act of 2016. 18 USC § 1836(c). This Court also has supplemental jurisdiction over Surge's state law claims under 28 USC § 1367.

11. A substantial part of the events giving rise to this action took place in Oakland County, Michigan, and venue is therefore proper under 28 USC § 1391(b)(2).

12. In addition, the Parties agreed in their Master Subscription Agreement ("Agreement") that any dispute concerning that Agreement would be addressed in the State of Michigan.

**GENERAL ALLEGATIONS**

13. Surge and PennyMac entered into the Agreement in connection with Order Number Q-00534-5 for a contract start date of February 19, 2021. The Agreement was directed to Jessica Velazquez on behalf of PennyMac. Due to the confidential nature of some aspects of the Agreement, it is not being attached to this

Complaint; however, PennyMac is aware of the Agreement and on information and belief is in possession of a copy.

14. PennyMac retained Surge to implement, customize, and support Surge's proprietary software to accommodate PennyMac's lending needs.

15. The Agreement defines confidential information to mean "all information disclosed by a party to the other party, whether orally or in writing, that is designated as confidential or that reasonably should be understood to be confidential given the nature of the information and the circumstances of disclosure."

16. Surge's confidential information includes the services, the terms and conditions of the Agreement, and all Order Forms (including pricing), as well as business and marketing plans, technology and technical information, product plans and designs, and business processes.

17. Under the Agreement, PennyMac became a registered user of Surge's proprietary Partner 360 Platform ("Platform"). The Platform is a cloud-based lending operation system that was created to evolve with a company's specific lending business and provides for a universal loan application process, product management and compliance, and loan process automation.

18. PennyMac was granted a limited right to access and use the Platform to process PennyMac's mortgage transactions.

19. PennyMac accessed and used Surge's customized Platform for years.

20. In signing the Agreement, PennyMac promised and agreed not to use any confidential information of the disclosing party for any purpose outside the scope of the Agreement.

21. Additionally, PennyMac promised and agreed that it would not reverse assemble, reverse compile or otherwise translate or reverse engineer the services, and would not—during the term of the Agreement or at any time after—use, copy, modify, distribute, transfer, lease, assign, inappropriately use or access or sublicense the services or any part thereof, except as expressly authorized by Surge.

22. The Agreement is clear and unambiguous about restrictions against misuse of the Platform and associated confidential materials.

23. In 2023, PennyMac terminated the Agreement.

24. In disregard of contractual restrictions and the trust that was placed in PennyMac, PennyMac created a copy of the Platform for its own benefit in lieu of the Platform. To further this scheme, PennyMac not only used Surge's confidential information, it also improperly shared access credentials with others who are not authorized to use the Platform under the Agreement.

25. PennyMac continues to use the Surge licenses.

26. On April 11, 2025, counsel for Surge sent a letter to PennyMac's counsel on the subject of accounts payable from PennyMac to Surge and also on the

subject of PennyMac's misappropriation of Surge's confidential information.

27.  On April 25, 2025, PennyMac's counsel took the position that Surge's counsel's letter was "not well received" and that "[t]his dispute is about billing and nothing more, and it will be treated as such."

28.  PennyMac has cloned Surge's proprietary software and continues to use Surge's software without authorization.

29.  By breaching its contractual duty of confidentiality and abusing its limited right of access to Surge's propriety system, PennyMac has avoided both the vast investments of resources and time and the assumption of risk that would have been required to create a functionally similar product without reference to the Platform.

30.  The actions of PennyMac materially breach its contractual obligations and constitute trade secret misappropriation.

31.  In addition, PennyMac owes to Surge payments in the sum of $176,690.81 that PennyMac has not paid despite multiple efforts by Surge to obtain payment for its services.

COUNT I – BREACH OF CONTRACT

32.  Surge incorporates the preceding allegations as set forth fully below.

33.  PennyMac signed a valid and binding agreement with Surge.

34.  At the time the Agreement was signed, all parties were competent to

contract.

35. The Agreement involves a proper and legal subject matter.

36. The Agreement was supported by legal and sufficient consideration.

37. Surge has performed all of its obligations under the Agreement.

38. PennyMac has not performed its obligations under the Agreement.

39. By signing the Agreement, PennyMac agreed to use Surge's services only in accordance with the Agreement, as set forth in Section 3.2.

40. The Agreement at Section 5.1 reserves all intellectual property rights connected to Surge's services to Surge exclusively and explicitly does not grant any rights in any Surge intellectual property to PennyMac.

41. The Agreement at Section 6.1 defines "Confidential Information" and designates Surge's services as Confidential Information; it also requires PennyMac to use the same care with Surge's confidential information that PennyMac applied to its own confidential information; further, it requires that a Party receiving the confidential information of another Party would not use that confidential information for any purpose outside the scope of the Agreement.

42. The Agreement at Section 10.6 provides that all confidentiality obligations of the Parties would survive any termination of the Agreement.

43. The foregoing acts and omissions of PennyMac constitute material breaches of its contractual obligations to Surge under the Agreement.

44. As a direct and proximate cause of PennyMac's breaches of the Agreement, Surge has suffered and will suffer damages, for which it seeks recovery.

### COUNT II – BREACH OF CONTRACT
### (UNPAID INVOICES)

45. Surge incorporates the preceding allegations as set forth fully below.

46. Surge and PennyMac were parties to an Agreement concerning the sale of services.

47. At the time the Agreement was signed, all parties were competent to contract.

48. The Agreement involves a proper and legal subject matter.

49. The Agreement was supported by legal and sufficient consideration.

50. Surge has performed all of its obligations under the Agreement.

51. PennyMac has materially breached the Agreement by failing and refusing to pay Surge according to the payment terms of the Agreement, including Section 4.1.

52. Specifically, PennyMac has failed and refused to pay Surge for Due Diligence Services as reflected in Invoice INVM-2082 dated February 18, 2023 and Sandbox Services as reflected in Invoice INVM-2083 dated February 18, 2023. Both invoices were directed to Jessica Velazquez on behalf of PennyMac. Due to the confidential nature of some aspects of these invoices, they are not being attached to this Complaint. However, PennyMac is aware of the invoices and on information

and belief is in possession of a copy of each invoice.

53.     From 2022, PennyMac has owed Surge $135,916.01 for Due Diligence Services.

54.     From 2023, PennyMac has owed Surge $40,774.8 for Sandbox Services.

55.     The Agreement specially provides for the addition of interest to unpaid invoices at Section 4.4.

56.     As a direct and proximate cause of PennyMac's material breach of the Agreement, Surge has suffered damages in the amount of at least $176,690.81, plus interest, costs, and attorney fees.

## COUNT III – ACCOUNT STATED

57.     Surge incorporates the preceding allegations as set forth fully below.

58.     At PennyMac's request, Surge sold and provided services to PennyMac on open account and on PennyMac's promise to pay for the same according to the payment terms agreed between the parties.

59.     Surge sent account statements to PennyMac, who received and kept these statements, acknowledging the amounts due according to the invoices. These invoices and statements of account are in the possession of PennyMac.

60.     PennyMac has not paid the balance owing on the account, despite Surge's demands for payment.

9

61. PennyMac is now indebted to Surge in the amount of $176,690.81, plus interest, costs, and attorney fees as set forth in the Declaration of Matt Hawkins attached as Exhibit 1.

## COUNT IV – MISAPPROPRIATION OF TRADE SECRETS
### UNDER 18 USC § 1836

62. Surge incorporates the preceding allegations as set forth fully below.

63. Surge owns trade secret information, including the Platform system, together with its related confidential documentation and other information.

64. This information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

65. Surge developed the Platform system over many years and at great expense. These trade secrets give Surge a competitive advantage over others in the industry and help maintain its customer base.

66. Surge has engaged in reasonable methods and practices to maintain the secrecy of the Platform system, together with its related confidential documentation and other information.

67. The trade secrets were provided to PennyMac under a duty of confidentiality and non-disclosure, and a promise of limited use.

68. PennyMac improperly provided the trade secrets or access to them to a third-party software developer, and PennyMac and its third-party software

developer improperly accessed and used these trade secrets to develop a clone of Surge's Platform, intending to replace the Platform.

69. PennyMac used Surge's trade secrets without express or implied consent when PennyMac knew or had reason to know, at the time of its use, that its knowledge of the trade secrets was acquired under circumstances giving rise to a legal duty to limit the use of the trade secrets.

70. PennyMac used Surge's trade secrets without express or implied consent when PennyMac knew or had reason to know, at the time of their use, that its knowledge of the trade secrets was derived through improper means.

71. PennyMac's access, use, and disclosure constitutes misappropriation of Surge's trade secrets under 18 USC § 1836.

72. PennyMac continues to use Surge's confidential and trade secret information.

73. Surge has been damaged by PennyMac's misappropriation of its confidential and trade secret information.

74. PennyMac's actions are willful and malicious.

75. In addition to actual compensatory damages, Surge is entitled to exemplary damages in an amount not more than two times the amount of compensatory damages, as well as reasonable attorney fees under 18 USC § 1836(3)(C) and (D).

## COUNT V – MISAPPROPRIATION OF TRADE SECRETS
## UNDER MCL 445.1901

76. Surge incorporates the preceding allegations as set forth fully below.

77. Surge owns trade secret information, including the Platform system, together with its related confidential documentation and other information.

78. This information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

79. Surge developed the Platform system over many years and at great expense. These trade secrets give Surge a competitive advantage over others in the industry and help maintain its customer base.

80. Surge has engaged in reasonable methods and practices to maintain the secrecy of the Platform system, together with its related confidential documentation and other information.

81. The trade secrets were provided to PennyMac under a duty of confidentiality and non-disclosure, and a promise of limited use.

82. PennyMac improperly provided the trade secrets or access to them to a third-party software developer, and PennyMac and its third-party software developer improperly accessed and used these trade secrets to develop a clone of Surge's Platform, intending to replace the Platform.

83. PennyMac used Surge's trade secrets without express or implied

12

consent when PennyMac knew or had reason to know, at the time of its use, that its knowledge of the trade secrets was acquired under circumstances giving rise to a legal duty to limit the use of the trade secrets.

84. PennyMac used Surge's trade secrets without express or implied consent when PennyMac knew or had reason to know, at the time of their use, that its knowledge of the trade secrets was derived through improper means.

85. PennyMac's access, use, and disclosure constitutes misappropriation of Surge's trade secrets under MCL 445.1905.

86. PennyMac continues to use Surge's confidential and trade secret information.

87. Surge has been damaged by PennyMac's misappropriation of its confidential and trade secret information.

88. PennyMac's actions are willful and malicious.

89. In addition to actual compensatory damages, Surge is entitled to its reasonable attorney fees under MCL 445.1905.

**COUNT VI – UNJUST ENRICHMENT**

90. Surge incorporates the preceding allegations as set forth fully below.

91. PennyMac has been unjustly enriched at the expense of Surge.

92. Surge provided useful services to PennyMac—services that took years of costly research and development to create and implement.

93. PennyMac originally agreed to pay Surge for the benefit of Surge's services but then reneged on its promise.

94. PennyMac continues to retain the benefit of Surge's research and development efforts in the form of a cloned platform system.

## COUNT VII – CONVERSION – COMMON LAW

95. Surge incorporates the preceding allegations as set forth fully below.

96. Surge's confidential and trade secret information is Surge's personal property.

97. PennyMac has wrongfully exercised dominion and control over Surge's confidential and trade secret information by downloading, copying, and/or transferring that information onto other devices and/or retaining and using Surge's confidential and trade secret information in the course of business.

98. Surge has suffered actual financial harm as a result of PennyMac's conversion of its confidential and trade secret information.

## COUNT VIII – CONVERSION UNDER MCL 600.2919a

99. Surge incorporates the preceding allegations as set forth fully below.

100. Surge's confidential and trade secret information is Surge's personal property.

101. PennyMac has wrongfully exercised dominion and control over Surge's confidential and trade secret information by downloading, copying, and/or

14

transferring that information onto other devices and/or retaining and using Surge's confidential and trade secret information in the course of business.

102. Surge has suffered actual financial harm as a result of PennyMac's conversion of its confidential and trade secret information.

103. Surge is entitled to treble damages, plus an award of costs and reasonable attorney fees because of PennyMac's unlawful actions under MCL 600.2919a.

**COUNT IX – DECLARATORY JUDGMENT OF OWNERSHIP**

104. Surge incorporates the preceding allegations as set forth fully below.

105. It is likely that PennyMac's position will be that it has ownership rights in the system it has developed which mirror Surge's Platform system and its associated components, which were developed through PennyMac and its third-party software developer's wrongful use and access to the Platform system and related confidential and trade secret information.

106. Surge asserts that PennyMac's platform is a derivative work of Surge's Platform system and/or is otherwise the property of Surge under the Agreement that grant Surge ownership or the right to ownership of all systems, software, and other works developed through the use of and access to the Platform system and related confidential and trade secret information.

107. Surge and PennyMac have actual, present, adverse, and antagonistic

interests as set forth above, and all necessary parties required for resolution of the same are before the Court.

108. Thus, there is an actual controversy regarding the rights of the parties sufficient for the Court to declare the rights and remedies of the parties, and there is a present need for this declaration because the parties have adverse legal interests, and there is and continues to be a dispute between the parties regarding the ownership of the system, modules, and software integrated into PennyMac's imitation Platform system.

109. The controversy is ripe for determination at this time because PennyMac's actions demonstrate that it is violating Surge's rights and will continue to claim ownership of these systems, modules, and software.

110. Accordingly, Surge is entitled to judgment against PennyMac under 28 USC § 2201(a), declaring that Surge is the owner of all intellectual property and software developed by or on behalf of PennyMac as a result of PennyMac's wrongful use and access to the Platform system and related confidential and trade secret information because, among other things: 1) that software's creation owes itself to PennyMac's and its third-party software developer's wrongful use and access to Surge's confidential and trade secret information, and 2) that software constitutes a derivative work of Surge's Platform system.

111. Surge demands a declaration that it has valid contractual and property

rights as described above; that PennyMac's activities materially interfere with such rights; and that Surge is the owner of any and all software, code, systems, modules, and other materials developed by PennyMac and/or its third-party software developer as a result of PennyMac's unlawful actions.

## COUNT X – INJUNCTIVE RELIEF

112. Surge incorporates the preceding allegations as set forth fully below.

113. PennyMac converted, stole, and misappropriated Surge's confidential and trade secret information by copying, downloading, transferring, and/or cloning Surge's Platform system.

114. PennyMac has used and continues to use Surge's confidential and trade secret information in their business despite knowing or being on notice that the confidential and trade secret information has been converted, stolen, and misappropriated.

115. PennyMac uses Surge's confidential and trade secret information to unfairly compete with Surge in the marketplace.

116. Surge is likely to succeed on the merits of its claim for all the reasons stated in this Complaint.

117. As a result of PennyMac's ongoing unlawful conduct, Surge is suffering irreparable harm in the form of damage to the value of its confidential and trade secret information, which it has invested many years and significant

money developing. That harm is impossible to quantify and cannot be compensated by monetary damages.

118. PennyMac would not be harmed by the issuance of an injunction that prevents them from using Surge's confidential and trade secret information to unfairly compete with Surge and gain an unfair advantage in the market.

119. The balance of the harms weighs in favor of granting injunctive relief to Surge.

120. The public interest favors protection of trade secrets, fair competition in the marketplace, and enforcement of contractual obligations.

121. The Michigan Uniform Trade Secrets Act and the federal Defend Trade Secrets Act expressly authorize injunctive relief to protect trade secrets and remedy the misappropriation of trade secrets. MCL 445.1903; 18 USC §1036(b)(3)(A).

## PRAYER FOR RELIEF

Plaintiff Surge OpCo, LLC, respectfully asks this Court:

(A) Permanently enjoin Defendant from further using Plaintiff's confidential and trade secret information for any purpose;

(B) Declare Plaintiff has valid contractual and property rights as described above; that Defendant's activities materially interfere with such rights; that Plaintiff is the owner of any and all software, code, systems, modules, and other materials developed by Defendant and/or its third-party software developer as a result of Defendant's unlawful actions.

(C) Direct Defendant to return or delete any of Plaintiff's confidential and

trade secret information in their possession;

(D)     Award Plaintiff monetary damages in the amount of $176,690.81, plus interest, costs, and attorney fees for Defendant's unpaid invoices.

(E)     Award Plaintiff payment on the account stated in the amount of $176,690.81, plus interest, costs, and attorney fees.

(F)     Award Plaintiff monetary damages, including to compensate it for the financial harm it has suffered as a result of PennyMac's theft, conversion, misuse, and misappropriate of Surge's confidential and trade secret information;

(G)     Award Plaintiff treble damages for Surge's unlawful conversion and misappropriation of Surge's confidential and trade secret information under MCL 600.2919a;

(H)     Award Plaintiff exemplary damages in an amount not more than two times the amount of compensatory damages for PennyMac's misappropriation of Surge's confidential and trade secret information under 18 USC 1836(3)(C):

(I)     Award Plaintiff its attorney fees and costs incurred in filing this lawsuit; and

(J)     Award Plaintiff any other relief or damages this Court deems just and proper.

## JURY DEMAND

Plaintiff Surge OpCo, LLC respectfully demands a trial by jury on all issues so triable.

Respectfully submitted,

**EVIA LAW PLC**

Case 2:26-cv-11212-JJCG-APP   ECF No. 1, PageID.20   Filed 04/14/26   Page 20 of 20

/s/ Steven Susser
Steven Susser (P52940)
Jessica Fleetham (P81038)
231 S Old Woodward Suite 220
Birmingham, MI 48009
Phone: 248-243-1201
steven@evialaw.com
jessica@evialaw.com

Dated: April 14, 2026

20